IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | Crim. No. 1:16-cr-050-2 |
| **v.** | : | |
| **RENITA BLUNT** | : | Judge Sylvia H. Rambo |

# M E M O R A N D U M

Presently before the court is Defendant Renita Blunt's motion for judgement of acquittal or, in the alternative, for a new trial (Doc. 140), following her trial and guilty jury verdict on one count of aggravated identity theft and one count of conspiracy to commit mail fraud. For the reasons stated herein, the motion will be denied.

## I. **Relevant Facts and Procedural History**

On November 9, 2016, Blunt was charged in a thirty-one count Second Superseding Indictment with twelve counts of mail fraud in violation of 18 U.S.C. § 1341, ten counts of money laundering in violation of 18 U.S.C. § 1956(a)(1)(B)(i), three counts of aggravated identity theft in violation of 18 U.S.C. § 1028A(a)(1), one count of conspiracy to commit mail fraud in violation of 18 U.S.C. § 1349, and one count of conspiracy to commit money laundering in violation of 18 U.S.C. § 1956(h). (Doc. 63.) Blunt and co-defendant Earl Hall ("Hall") were accused of perpetrating a scheme between January 2013

and June 2015, which involved submitting counterfeit military discharge certificates, bearing the names, dates of birth, and social security numbers of eleven individuals, to agencies in various states in order to fraudulently collect unemployment compensation benefits for ex-service members.

Trial commenced on March 6, 2017. During trial, Blunt moved for judgment of acquittal pursuant to Federal Rule of Criminal Procedure 29 on all counts, but the court denied the motion. Prior to trial, Blunt submitted a proposed jury instruction for the defense of duress. (Doc. 98, pp. 5-7.) The Government objected to this instruction and, after hearing arguments on the issue, the court ruled that the duress instruction would not be included in the jury charge. At the time the jury was charged, Blunt noted her objection to the court's ruling. On March 10, 2017, the jury found Blunt guilty of Count 26 for aggravated identity theft and Count 30 for conspiracy to commit mail fraud. (Doc. 131.) She was acquitted of Counts 1 through 22, 28, 29, and 31. (*Id.*) The jury also determined that Blunt was subject to asset forfeiture in the amount of $1,026.00 (*Id.*)

At trial, the Government introduced an unemployment compensation benefit for ex-service members ("UCX") claim submitted to the Pennsylvania Department of Labor and Industry ("PA L&I") under the identity of Shawnta Williams. (Gov. Ex. 7.) Included in this claim was a DD Form 214, which is a military discharge certificate, in the name of Shawnta L. Williams with a date of birth of April 16,

1986. (*Id.*) The information provided by PA L&I indicates that Shawnta Williams' claim was opened on January 11, 2014, and closed on August 1, 2014, with total payments of $14,638. (*Id.*) Calls were made in reference to this claim on January 22, 2014, January 24, 2014, March 31, 2014, and June 25, 2014. (*Id.*) The Government presented a recording from the June 25, 2014 call at trial. (Gov. Ex. 69.)

Special Agent Syreeta Scott ("SA Scott") of the United States Department of Labor, Office of Inspector General testified that she interviewed Blunt on March 3, 2016, at which time Blunt admitted to posing as Shawnta Williams during the June 25, 2014 call. (Trial Tr. Mar. 8, 2017, at p. 112.) Further, Blunt stipulated that she made the June 25, 2014 call. (Gov. Ex. 100.) During direct-examination, Blunt testified that Hall communicated to her that Shawnta Williams was not a real person and that Blunt's family would be physically harmed if she did not make the phone call posing as Shawnta Williams. (Trial Tr. Mar. 9, 2017, at pp. 57-59.) However, on cross-examination, Blunt admitted she told SA Scott during her interview on March 3, 2016, that Hall informed her that Shawnta Williams was his cousin. (*Id.* at 76-77.)

The Government introduced Blunt's phone records and a summary chart of those records indicating thirty-six phone calls were made from Blunt's phone to phone numbers associated with PA L&I, the Pennsylvania Office of Treasurer, and

the Hawaii Department of Labor between January 16, 2013, and September 22, 2014. (*See* Gov. Exs. 54 & 83.) Regarding the DD Form 214 for Shawnta Williams, Brian Hewitt, United States Army Human Resources Command, testified that there was no record of an individual possessing the personal identifiers of Shawnta Williams having served in the Army. (Trial Tr. Mar. 8, 2017, at p. 86.) Lastly, the Government introduced a certified California Department of Motor Vehicles driver's license in the name of Shawnta Denise Williams with a date of birth of August 16, 1986, which corresponded with the UCX claims submitted in that name. (Gov. Exs. 7 & 53; Trial Tr. Mar. 8, 2017, at pp. 70-71.)

## II. <u>Legal Standard</u>

Pursuant to Federal Rule of Criminal Procedure 29, the Court "must enter a judgment of acquittal of any offense for which the evidence is insufficient to sustain the conviction." Fed. R. Crim. P. 29(a). The Third Circuit has stated that the relevant inquiry in deciding a motion for judgment of acquittal is "whether, after reviewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *United States v. McIntyre*, 612 F. App'x 77, 78 (3d Cir. 2015) (quoting *United States v. Caraballo-Rodriguez*, 726 F.3d 418, 424-25 (3d Cir. 2013) (en banc) (quoting *Jackson v. Virginia*, 443 U.S. 307, 318-19 (1979)).

Federal Rule of Criminal Procedure 33 provides that "the court may vacate any judgment and grant a new trial if the interest of justice so requires." Fed. R. Crim. P. 33(a). A district court "can order a new trial on the ground that the jury's verdict is contrary to the weight of the evidence only if it 'believes that there is a serious danger that a miscarriage of justice has occurred–that is, that an innocent person has been convicted.'" *United States v. Johnson*, 302 F.3d 139, 150 (3d Cir. 2002) (quoting *United States v. Santos*, 20 F.3d 280, 285 (7th Cir. 1994)).

A new trial should only be granted sparingly and in exceptional situations. *United States v. Silveus*, 542 F.3d 993, 1005 (3d Cir. 2008); *United States v. Brennan*, 326 F.3d 176, 189 (3d Cir. 2003). Exceptional situations include those in which trial errors, "either individually or in combination, 'so infected the jury's deliberations that they had a substantial influence on the outcome of the trial.'" *United States v. Thornton*, 1 F.3d 149, 156 (3d Cir. 1993); *United States v. Amirnazmi*, 648 F. Supp. 2d 718, 719-20 (E.D. Pa. 2009).

### III. Discussion

In her motion seeking either judgment of acquittal or a new trial, Blunt requests that the court set aside the guilty verdict to the aggravated identity theft and conspiracy to commit mail fraud charges, as well as the forfeiture finding. Blunt also argues that the court erred by denying her requested jury instruction on the defense of duress. The court will address each argument in turn.

### A. <u>Aggravated Identity Theft</u>

Blunt argues that the guilty verdict for aggravated identity theft should be set aside for three reasons: (1) the admission of the Shawnta Williams' California driver's license (Gov. Ex. 53) was erroneous; (2) the Government did not prove that Shawnta Williams is a real person, which is a required element of the offense; and (3) the Government did not prove that Blunt knew Shawnta Williams was a real person. (Doc. 142, pp. 7-15.)

At trial, Blunt objected to the admission of Shawnta Williams' California driver's license (Gov. Ex. 53) on two grounds: (1) that the Department of Motor Vehicle document is hearsay; and (2) that the license is not relevant without some foundation establishing that the individual depicted in the photo is actually Shawnta Williams. The court overruled both objections during trial. Blunt now concedes that the court was correct in overruling her hearsay objection as a driver's license is an admissible public record in accordance with Federal Rule of Evidence 803(8). (Doc. 142, pp. 7-8.) *See, e.g.*, *United States v. Cuesta*, Crim. No. 06-cr-40, 2007 WL 2729853, *15 (E.D. Ca. Sept. 19, 2007); *United States v. Kuzmenko*, Crim. No. 12-cr-62, 2014 WL 1334003, *3 (E.D. Ca. Apr. 3, 2014). As to relevancy, Blunt acknowledges that some courts do not require "foundational testimony" for public records because they are presumed trustworthy, and that Federal Rule of Evidence 902 provides that domestic public documents are self-

6

authenticating. (Doc. 142, p. 8.) Blunt nonetheless maintains that the court erred in overruling her relevance objection. (*Id.*) Blunt further argues that the Government did not prove beyond a reasonable doubt that Shawnta Williams is a real person, or that Blunt knew Shawnta Williams was a real person as required by law.

The crime of aggravated identity theft requires the Government to show that Blunt knew that the means of identification at issue belonged to a real person. 18 U.S.C. § 1028A(a)(1); *Flores-Figueroa v. United States*, 556 U.S. 646, 657 (2009). The Government introduced a California Department of Motor Vehicles driver's license in the name of Shawnta Denise Williams with a date of birth of April 16, 1986, which corresponded with the UCX claim submitted in that name. (Gov. Exs. 7 & 53; Trial Tr. Mar. 8, 2017, at pp. 70-71.) The license was sealed and certified as being a true copy of an official record kept by the California Department of Motor Vehicles. (Gov. Ex. 53; Trial Tr. Mar. 8, 2017, at pp. 70-71.)

At trial, the court admitted Shawnta Williams' driver's license under Federal Rules of Evidence 902(1) and (4). Rule 902(1) provides that domestic public documents that are sealed and signed are self-authenticating. Fed. R. Evid. 902(1). Further, the court may accept certified copies of public records as self-authenticating. Fed. R. Evid. 902(4). Thus, in accordance with Federal Rule of Evidence 1005, the jury was entitled to rely upon the content of the driver's license to prove that there was a real person by the name of Shawnta Williams with a date

of birth of April 16, 1986. *See* Fed. R. Evid. 1005. Further, courts have recognized that it is common knowledge that government agencies scrutinize personal identifying information to ensure they belong to a real person when issuing documents such as driver's licenses. *See United States v. Gomez-Castro*, 605 F.3d 1245 (11th Cir. 2010); *United States v. Holmes*, 595 F.3d 1255, 1258 (11th Cir. 2010). Accordingly, viewing the evidence in the light most favorable to the Government, the court finds that the jury was provided with sufficient reliable evidence in the form of a certified driver's license, which was properly admitted into evidence, to support her finding that Shawnta Williams was a real person.

As to whether Blunt knew Shawnta Williams was a real person, during the interview with SA Scott, Blunt admitted to posing as Shawnta Williams during the June 25, 2014 phone call to PA L&I. (Trial Tr. Mar. 8, 2017, at p. 112.) Blunt testified that Hall told her at one point that Shawnta Williams was his cousin, and at another time, that she was not a real person. (Trial Tr. Mar. 9, 2017, at pp. 57-59.) In weighing the evidence, the jury was entitled to accept Blunt's testimony that Shawnta Williams was Hall's cousin. By doing so, a reasonable jury could accept this as sufficient evidence that Blunt knew Shawnta Williams was a real person. For these reasons, the court will not disturb the conviction of aggravated identity theft in Count 26.

### B. Conspiracy to Commit Mail Fraud

While Blunt does not dispute that the Government presented evidence that Hall conspired with at least one other person to commit mail fraud, she maintains that a rational jury could not conclude that she was a party to the agreement or shared a "unity of purpose" with Hall or any other unindicted co-conspirator. (Doc. 142, p. 15.) Blunt argues that there was no direct evidence of any action she took other than placing one phone call posing as Shawnta Williams to PA L&I on June 25, 2014. (*Id.* at 16.) According to Blunt, she only placed that call because Hall told her that he and their family were in danger of physical harm if she did not make the call. (*Id.*) She believes her lack of any independent knowledge of the crime is supported by Hall's voice in the background of the recorded call prompting Blunt's responses to the PA L&I representative. (*Id.*) Ultimately, Blunt insists that her actions were at the request/direction of Hall while she was under duress, and any other circumstantial evidence, such as her telephone records and her home's proximity to bank locations where material deposits and withdrawals were made, is insufficient to prove Blunt intended to join the conspiracy. (*Id.* at 17-18.)

The Government argues that the single telephone call posing as Shawnta Williams established Blunt's specific intent to defraud. (Doc. 240, p. 15.) The Government contends that, even if Blunt had no independent knowledge about

9

what she was supposed to say during the June 25, 2014 call, Blunt's words during that call made her aware that the object of the conspiracy was to fraudulently obtain money. (*Id.* at 16.) Specifically, during the call: Blunt provided Shawnta Williams' name, social security number, address, and phone number; Blunt stated "I was wondering what was going on with my direct deposit?"; and Blunt responded "yes" after the PA L&I representative asked, "You filed for weeks ending 6-21 and 6-14, is that correct?" (*Id.*) The Government avers that this telephone call, without any other evidence, was sufficient for Blunt to be aware that she was conspiring with Hall to fraudulently obtain government benefits. (*Id.*)

The court agrees with the Government. Even if Blunt was unaware of the conspiracy prior to the June 25, 2014 telephone call, she certainly became aware of the scheme and worked to achieve the objective of fraudulently obtaining money when she placed that call. Furthermore, a rational jury could interpret this lone telephone call as an act in furtherance of the goal to obtain fraudulent funds. Accordingly, the court will not set aside the guilty verdict on Count 30.[1]

### C. **<u>Jury Instruction on the Defense of Duress</u>**

Prior to trial, Blunt submitted a proposed jury instruction for the defense of duress. (Doc. 98.) During the charge conference, the Government objected to

---

[1] Blunt requests that if the court sets aside the jury verdict on Counts 26 and 30, then the court should also set aside the jury's forfeiture verdict. Because the court will not disturb the jury verdict, this argument is moot.

charging the jury on this defense. After hearing argument on the issue, the court orally ruled that the duress instruction would not be included in the jury charge. Blunt again noted her objection to the denial of the requested instruction at the time the jury was charged. Now, Blunt argues that the court erred by not permitting the jury instruction.

In order for the defense of duress to be available to a defendant, the defendant must prove four elements: (1) an immediate threat of death or serious bodily injury; (2) a well-grounded fear that the threat will be carried out; (3) no reasonable opportunity to escape the threatened harm; and (4) the defendant did not recklessly place herself in a situation in which she would be forced to engage in criminal conduct. *United States v. Miller*, 59 F.3d 417, 422 (3d Cir. 1995); *see also United States v. Santos*, 932 F.2d 244, 249 (3d Cir. 1991); *United States v. Paolello*, 951 F.2d 537, 541 (3d Cir. 1991). The Third Circuit has recognized that this defense is not often successful. *Miller*, 59 F.3d at 422.

At trial, the court declined to charge the jury with the defense of duress due to the lack of immediate threat of death or serious bodily injury to Blunt and her family. Blunt testified that Hall told her if she did not make the call someone was going to harm Blunt, Hall, or their family. Assuming Blunt's testimony is true, the threat does not have the level of immediacy that is required for the defense of duress. Courts only permit this defense where "the immediacy and specificity of

11

the threat is compelling." *United States v. Alston*, 526 F.3d 91, 96 (3d Cir. 2008). "Only in rare circumstances will anything but an 'immediate emergency' constitute a present threat." *Id.* at 95 n.7. Blunt did not provide any of the necessary specificity or immediacy to invoke the defense of duress. Thus, the court properly refused to charge the jury on the defense of duress.

## IV. Conclusion

For the reasons stated herein, Blunt's motion for judgment of acquittal or new trial will be denied. An appropriate order will issue.

s/Sylvia Rambo  
SYLVIA H. RAMBO  
United States District Judge

Dated: December 21, 2017